UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TYLER DREHER,

    PLAINTIFF,

v().                                                                          Case No.:

EQUIFAX INFORMATION SERVICES,
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., J.G. WENTWORTH                ***JURY TRIAL DEMANDED***
HOME LENDING, LLC AND TRANS
UNION, LLC,

    DEFENDANTS.

## COMPLAINT

Plaintiff Tyler Dreher ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., J.G. Wentworth Home Lending, LLC and Trans Union, LLC[1] as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2. Indeed,

    Credit is the lifeblood of the modern American economy, and for the American
    consumer access to credit has become inextricably tied to consumer credit scores

---

[1] Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc. and Trans Union, LLC are referred to collectively as the "CRA Defendants."

1

as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

3. Accordingly, and

In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

4. Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for

consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. Notwithstanding, the CRA Defendants have been sued thousands of times wherein an allegation was made that said defendants violated the FCRA.

6. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

7. In the regular course of business, the CRA Defendants maintains records of lawsuits filed against them.

8. Likewise, the FCRA imposes duties on persons who furnish information to a consumer reporting agency ("furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5). Specifically, the furnisher must satisfy five duties after receipt of notice of a consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A-E).

9. Despite federal law, Congressional mandate, federal and state government enforcement actions, thousands of consumer lawsuits, credit report errors remain a significant problem for consumers, including Plaintiff.

10. The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

11. Equifax reported more than $3.4 billion in operating revenue in its annual report for year ending in 2018.[2]

12. Experian Information Solutions, Inc.'s parent corporation, Experian plc, reported $4.66 billion in revenue in 2018.[3]

13. Trans Union reported over $2.3 billion in revenue for year ending 2018.[4]

14. J.G. Wentworth Home Lending, LLC ("JG") reported over $420 million in revenue for year ending in 2017.

## JURISDICTION & VENUE

15. This Court has jurisdiction pursuant to 15 U.S.C. §§ 1681p and 28 U.S.C § 1331.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

17. Plaintiff Tyler Dreher ("Plaintiff") is an adult individual and a resident of Brentwood, Tennessee. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

18. Defendant Equifax Information Services, LLC ("Equifax") does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NW, Atlanta, Georgia 30309-2402. Equifax is a CRA as defined by 15 U.S.C. §

---

[2] https://investor.equifax.com/~/media/Files/E/Equifax-IR/Annual%20Reports/2018-annual-report.pdf Last visited October 19, 2020.

[3] https://www.experianplc.com/media/3529/experian-2018-annual-report.pdf Last visited October 19, 2020.

[4] https://investors.transunion.com/~/media/Files/T/Transunion-IR/annual-reports/2018/annual-report-2018.pdf Last visited October 19, 2020.

1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties for monetary compensation. Equifax outsources business processes, including consumer disputes and request for consumer disclosures.

19. Defendant Experian Information Services, Inc. ("Experian") does business in this judicial district and is an Ohio corporation with its principal place of business located at 475 Anton Blvd Costa Mesa, California 92626-7037. Experian is a CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties for monetary compensation. Experian outsources business processes, including consumer disputes and request for consumer disclosures.

20. Defendant Trans Union, LLC ("Trans Union") does business in this judicial district and is a Delaware corporation with its principal place of business located at 555 W Adams St., Chicago, Illinois 60661-5753. Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties for monetary compensation. Trans Union outsources business processes, including consumer disputes to other countries, such as India. Trans Union outsources business processes, including consumer disputes and request for consumer disclosures.

21. Defendant J.G. Wentworth Home Lending, LLC ("JG") is a person who furnishes information to consumer reporting agencies under FCRA, 15 U.S.C. § 1681s-2,[5] and conducts

---

[5] Plaintiff is making claims against JG under § 1681s-2(b). Plaintiff is not making any claims against said defendant under § 1681s-2(a).

5

substantial and regular business activities in this judicial district. JG is a foreign corporation with its principal place of business located at 3350 Commission Ct., Woodbridge, VA 22192-1784.

## FACTUAL ALLEGATIONS

22. The CRA Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

23. The CRA Defendants sold credit reports relating to Plaintiff to third parties with inaccurate and derogatory information. The inaccurate information includes, but is not limited to, a mortgage account ending in 3287 reported as 90-119 days past due between July and September 2019 (the "Account"). The derogatory reporting of the Account is inaccurate because the Account was never past due.

24. JG notified Plaintiff in or around June 2019 that it would no longer service the Account effective July 1, 2019, and Chase Servicing Center ("Chase") would begin servicing the account, including accepting payments. JG also notified Plaintiff that as of July 1, 2019 it would no longer accept payments for the Account.

25. Beginning July 2019, Plaintiff made timely payments for the Account to Chase.

26. Chase also credit reported Plaintiff's timely payments made by Plaintiff to the CRA Defendants beginning in or around July 2019.

27. The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict Plaintiff's credit history or creditworthiness, or both.

28. Equifax prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information. On at least three occasions, Plaintiff disputed the inaccurate information to Equifax. Equifax did not delete or reinvestigate all of the disputed items of information. Alternatively, Equifax failed to consider all relevant information and perform a

reasonable reinvestigation of the disputed items of information. Plaintiff requested Equifax to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute. On at least one occasion, Equifax failed to provide Plaintiff with the steps it undertook while reinvestigating the disputed items of information. Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file. On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file. Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file due to fraud. On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

29. Experian prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information. On at least two occasions, Plaintiff disputed inaccurate information to Experian. Experian did not delete or reinvestigate the disputed items of information. Alternatively, Experian failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information. Plaintiff requested Experian to provide Plaintiff with Plaintiff's file. On at least one occasion, Experian failed to provide Plaintiff with Plaintiff's file. Plaintiff requested Experian to provide Plaintiff with Plaintiff's file due to fraud. On at least one occasion, Experian failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

30. Trans Union prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information. On at least four occasions, Plaintiff disputed inaccurate information to Trans Union. Trans Union did not delete or reinvestigate all of the disputed items of information. Alternatively, Trans Union failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information. Plaintiff requested Trans Union to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute. On at least one occasion, Trans Union failed to provide Plaintiff

with the steps it undertook while reinvestigating the disputed items of information. Plaintiff requested Trans Union to provide Plaintiff with Plaintiff's file. On at least one occasion, Trans Union failed to provide Plaintiff with Plaintiff's file. Plaintiff requested Trans Union to provide Plaintiff with Plaintiff's file due to fraud. On at least one occasion, Trans Union failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

31. In response to Plaintiff's disputes, the CRA Defendants did not contact third parties concerning the accuracy of the disputed information.

32. The CRA Defendants also did not review underlying account documents for each account contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the applications for credit and the personal identifying information reported with each tradeline.

33. The CRA Defendants did not make a reasonable inquiry into the disputed information, such as review Plaintiff's payment history reported by Chase for the same time and account.

34. The CRA Defendants did not review all relevant information provided by Plaintiff related to the disputed information.

35. At best, the CRA Defendants verified the false information by confirming some of Plaintiff's personal identifying information with some of the personal identifying information reported by the data furnishers who supplied the disputed information.

36. The CRA Defendants failed to modify or delete the inaccurate information.

37. Despite Plaintiff's exhaustive efforts to date, the CRA Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

38. Plaintiff disputed the inaccurate information directly to JG by phone and online using its customary dispute process.

39. JG failed to report the account with the appropriate account in dispute code to the CRAs after receipt of his disputes.

40. Plaintiff disputed the inaccurate information to Equifax, Experian, or Trans Union.

41. Equifax, Experian, or Trans Union notified JG of the disputed information.

42. JG notified Equifax, Experian, or Trans Union on at least two occasions that it verified the disputed information.

43. As a part of JG's FCRA investigation, it did not:

   a. contact Plaintiff concerning the accuracy of the disputed information;

   b. contact third parties, including but not limited to Chase concerning the accuracy of the disputed payment history;

   c. review underlying account documents, such as the Notice of Servicing Transfer letter or any documents that indicated no payment was due on the Account to JG after July 1, 2019;

   d. make a reasonable inquiry into the disputed information, including a review correspondence with Plaintiff or phone recordings;

   e. review all relevant information provided by the CRA Defendants pertaining to the disputed Account;

   f. modify or delete the false account information; or,

   g. mark or identify the Account as in dispute.

44. At best, JG verified the false information by confirming some of Plaintiff's personal identifying information related to the account with some of the personal identifying information reported by a CRA Defendant.

45. JG notified at least one CRA Defendant that its reporting of the inaccurate information was accurate.

46. JG did not conduct a reasonable investigation with respect to the disputed information.

47. As of result of the defendants' conduct, Plaintiff has suffered unique and distinct actual damages in the form of unfavorable credit terms, out-of-pocket expenses, credit score lowered by over 100 points, interference with Plaintiff's normal and usual activities, stomachaches, loss of appetite, stress headaches and emotional distress,

48. At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

49. At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

50. The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

10

Case 3:20-cv-00898   Document 1   Filed 10/20/20   Page 10 of 13 PageID #: 10

51. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

52. Equifax negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), c-1, g, and i.

53. Alternatively, Equifax willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), c-1, g, and i.

54. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against Experian)**

55. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

56. Experian negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

57. Alternatively, Experian willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

58. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against Trans Union)**

59. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

60. Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

61. Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i

62. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against JG)**

63. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

64. JG negligently failed to comply with the requirements of Section 1681s-2(b).

65. Alternatively, JG willfully failed to comply with the requirements of Section 1681s-2(b).

66. As a result of 's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**JURY DEMAND**

67. Plaintiff requests a jury trial on all claims.

**PRAYER**

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

12

Case 3:20-cv-00898   Document 1   Filed 10/20/20   Page 12 of 13 PageID #: 12

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TN BAR NO. 036451
**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T: (615) 370.9659
F: (205) 208.9632
E: MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF TYLER DREHER*